EDWARD F. BROWNELL *v.* PATRICK J. RUSSELL.

October Term, 1903.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, and STAFFORD, JJ.

Opinion filed February 29, 1904.

*Chief of Police—Removal—Constitutional Law—Rule of Police Department—Reasonableness.*

The chief of police of a city is a "police officer," and a "member of the police force" within the meaning of a rule adopted by the police department to secure the good conduct and efficiency of the police force.

The officers elected in the organization of party caucuses, and the positions filled by the action of those caucuses, are not such officers and offices as are contemplated by the eighth article of the Constitution of the State of Vermont.

A rule of the police department of a city forbidding members of the police force to be delegates to or members of political caucuses, or to take part in any political canvass, is a reasonable exercise of the power to make rules for the government of the police force.

When the chief of police of a city acts as chairman of a caucus, and as chairman of a political meeting, he is guilty of official misconduct sufficient to justify his removal from office, on the ground that he has thereby violated a rule enacted by the police department forbidding members of the police force to be delegates to or members of political caucuses, or to take part in any political canvass.

When a rule of the police department of a city forbids police officers to do a specific act, and the board of examiners, upon charges preferred against him, finds that the chief of police has done the forbidden thing, they cannot control the effect of their finding by also reporting that they find him not guilty of the charge.

COMPLAINT for a writ of *quo warranto* brought to the Supreme Court for Chittenden County at its October Term, 1903, and then heard on an agreed statement. The opinion states the facts.

*J. E. Cushman* for the relator.

Under the city charter the mayor cannot remove the relator except for the causes therein defined, which are merely declaratory of the common law on that subject. *Rex.* v. *Richardson*, 1 Burr. 517; *People ex rel. Munday* v. *Board, etc.*, 72 N.Y. 445; *People ex rel. Simms* v. *Fire Com'rs*, 73 N.Y. 437; *People ex rel. Keech* v. *Thompson*, 94 N. Y. 451.

The cause must be one which touches the qualifications of the officer for the office. *State* v. *Hawkins*, 44 Ohio St. 98; *State ex rel. Haight* v. *Lin*, 34 N. J. L. 14; *Ayers* v. *Newark*, 49 N. J. L. 170; *People* v. *Grant*, 12 Daly (N. Y.) 294.

The examiners found the relator not guilty of the two charges upon which the mayor bases his order of removal, the decision of the examiners will not be reviewed by this Court. *State* v. *Prince*, 45 Wis. 613; Throop Pub. Officers, §§ 394,

396; *Tainter* v. *Lucas,* 29 Wis. 375; *Gager* v. *Supervisors,* 47 Mich. 167; *Hamtramck* v. *Holihan,* 46 Mich. 127; *Patton* v. *Vaughan,* 39 Ark. 211; *U. S.* v. *Oliver,* 6 Mackey, 47; *Oliver* v. *City,* 69 Ga. 165.

*J. A. Brown* for the respondent.

The wisdom of the mayor in respect of the removal is not for review here. Throop Pub. Officers, pp. 386-387.

MUNSON, J. The charter of the city of Burlington requires the appointment of a board of police examiners, and provides that this board, with the approval of the mayor, "shall make rules for the government of the police force." Number 13 of the rules established under this provision, after recognizing the right of suffrage, declares that "no member will be permitted to be a delegate or representative to, or member of, any political or partisan convention or caucus, or take any part in any political canvass."

Section 213 of the charter provides that "whenever it shall appear to the mayor that any member of said force is or has been derelict in his official duty, or is guilty of any misconduct in his private or official life," the mayor may suspend such member pending an investigation by the board of examiners, and that the board, upon the written request of the mayor, shall investigate whatever charges are made "and report the facts found by them relative thereto in writing to the mayor"; and, by the same section, the mayor is given power to remove or suspend such member, "when found guilty, or when recommended for dismissal or suspension by said board."

In February, 1903, and until the proceedings now under consideration, the relator was the chief of police. On the first day of July, 1903, the mayor presented to the police ex-

aminers written charges against the relator, charging among other things that on the fourteenth day of February, 1903, the relator, in violation of Rule 13, "took part in a certain political caucus in ward two in said city, and acted as chairman of said caucus"; and further, that on the twenty-eighth day of February, 1903, the relator, in violation of said rule, "acted as chairman, and was one of the speakers, at a political meeting held in St. John's Hall * * in said city." It appears from the agreed statement that the political caucus referred to as held in ward two was a caucus to nominate Republican candidates for ward officers to be supported at the ensuing election, and that the relator was a legal voter in that ward.

The charges above stated were specifically reported upon as follows: "The police examiners find that said Brownell acted as chairman of a political caucus held on or about the 17th day of February, but did not take part therein in violation of said Rule number 13, and they find him not guilty of said charge"; and "find that said Brownell was present at a political meeting held in St. John's Hall on or about the 28th day of February, 1903, and acted as chairman, but was not one of the public speakers at that meeting, and took no part therein in violation of said Rule number 13, and they find him not guilty of said charge." The mayor considered that his charges were sustained by these findings, and revoked the relator's appointment and put the defendant in his place.

It is urged in behalf of the relator that Rule 13 does not apply to the chief of police. The arguments advanced in support of this claim are based upon the arrangement and classification of the rules relating to the police department, and upon certain changes in phraseology occurring in recent amendments to the charter. We do not consider it necessary to take up these matters in detail. Nothing is suggested that

leads us to doubt that the chief of police is a "police officer," a "member of the police force," and amenable to the rules adopted to secure the good conduct and efficiency of the force.

The relator refers to the eighth article of our Constitution, which declares that all freemen "have a right to elect officers, and be elected into office"; and insists that under this article he had a "right to attend the caucus in question and be elected to office therein." If the scope of the provision were held to be as claimed, it is possible that the acceptance of an appointment, with this rule in force, would be a waiver of the constitutional right. But it is not necessary to inquire as to this, for it is clear that the officers elected in the organization of party caucuses, and the places filled by the action of those caucuses, are not such officers or offices as are contemplated by the article in question.

The argument that this is too small a matter to be accounted such a dereliction or misconduct as would bring the relator within the mayor's power of removal, is not applicable. This is not a charge brought under a general provision requiring faithful service and good conduct, but a charge of the violation of a specific requirement. The breach of such a requirement is necessarily official misconduct, and the only question here is whether the rule itself was such as the board was authorized to adopt.

It is doubtless true that the restrictions imposed must be a reasonable exercise of the power granted, and have some just relation to the end in view. It seems to us that the provision in question satisfies these requirements. We think the removal of the police force from the field of active politics is calculated to promote the efficiency of the force and the purity of municipal government, and that the rule adopted imposes.

no greater restriction than is reasonably necessary to the accomplishment of this purpose.

But it is said that the board has found the relator not guilty. This is a conclusion of the examiners which has no support in the facts they have reported. When the rule forbids the doing of a particular thing, and the doing of that thing is found by the examiners, they cannot control the effect of their finding by saying that the doer is not guilty. The report of the examiners justified the mayor in taking action, and the extent of the penalty was a matter for his discretion.

*Petition dismissed with costs.*