FRATERNAL ORDER OF POLICE *v.* LANSING BOARD OF POLICE & FIRE COM'RS.

1. MUNICIPAL CORPORATIONS—BOARD OF POLICE AND FIRE COMMISSIONERS—PUBLIC PEACE.

City charter giving board of police and fire commissioners the entire control of the police force thereby makes board responsible to the people for the preservation of the public peace (Lansing Charter, chap. 14, § 212).

2. SAME—CONTROL OF POLICE DEPARTMENT.

The control of a city police department is a function of local municipal government.

3. SAME—POLICE FORCE—DISCIPLINE.

The police force of a city is a department of municipal government which requires, that the members shall surrender their individual opinions and power of action to that of the com-

manding officer and in which strict discipline must be effectively enforced without supervision by any other department of the State, as the members of the force owe to the public their undivided allegiance.

4. OFFICERS—SURRENDER OF PRIVATE RIGHTS.

Those who serve the public, either as makers, interpreters or enforcers of the law, must necessarily surrender some of their presumed private rights while acting in such capacity.

5. MUNICIPAL CORPORATIONS—POLICE FORCE—RULES AND REGULATIONS.

A person appointed as a member of a police force of a city thereby subjects himself to the reasonable rules and regulations adopted by the city board having control of the police force.

6. SAME—POLICE AND FIRE DEPARTMENTS—INTERFERENCE WITH CONTROL.

Association with a fraternal organization which, on any occasion or for any purpose, attempts to control the relations of members of either the police or fire departments toward the municipality which they undertake to serve is inconsistent with the discipline which such employment imperatively requires and must prove subversive of the public service and detrimental to the general welfare.

7. SAME—POLICE FORCE—FRATERNAL ORDER—ASSOCIATE MEMBERS.

Fraternal order limited to members of police force of a municipal corporation which provides that private citizens may become associate members upon payment of dues for which they are furnished a membership card and a car emblem gave special privileges to associate members and is contrary to public policy.

8. SAME—OFFICERS—DISCRETION—BURDEN OF SHOWING ABUSE.

The burden of showing arbitrary action upon the part of municipal officers vested with a large measure of discretionary authority is upon those who charge it.

9. SAME—FRATERNAL ORDERS—POLICE FORCE—ASSOCIATE MEMBERS —CONSTITUTIONAL LAW.

Resolution of city board of police and fire commissioners confining membership of fraternal order of police to members of the police force except the superior officers and requiring the fraternal order to refrain from taking into the order so-called associate or honorary members was not arbitrary, was within the scope of the power granted by city charter

and did not deprive the fraternal order or individuals concerned of any constitutional rights (Lansing Charter, chap. 14, § 212).

10. COSTS—PUBLIC QUESTION—MUNICIPAL INTERFERENCE. WITH MEMBERSHIP OF FRATERNAL ORDER OF POLICE.

No costs are granted in suit to enjoin interference by city board of police and fire commissioners with membership and activities of a fraternal order composed of members of the police force and so-called honorary or associate members, a public question being involved.

SHARPE, J., dissenting.

Appeal from Ingham; Carr (Leland W.), J. Submitted January 13, 1943. (Docket No. 39, Calendar No. 42,200.) Decided June 30, 1943. Rehearing denied September 7, 1943. Certiorari denied by Supreme Court of the United States March 13, 1944.

Bill by Fraternal Order of Police, a Michigan corporation, and Joseph Johnson Lodge No. 102 of the City of Lansing against D. D. Harris and others as members of the Lansing Board of Police & Fire Commissioners to restrain interference with organization and conduct of plaintiffs' lodge. Bill dismissed. Plaintiffs appeal. Affirmed.

*Haskell L. Nichols* (*Andrew J. Hagan,* of counsel), for plaintiffs.

*Clay Campbell* (*Watson & Amerson* and *Charles P. Van Note,* of counsel), for defendants.

*Paul E. Krause,* Corporation Counsel, and *Nathaniel Goldstick,* Assistant Corporation Counsel, for City of Detroit, *amicus curiae.*

SHARPE, J. (*dissenting*). This is a suit brought by the Fraternal Order of Police, a Michigan nonprofit corporation, and Joseph Johnson Lodge No. 102 of the city of Lansing for the purpose of enjoining and restraining the members of the board of

police and fire commissioners of the city of Lansing from enforcing the following resolution adopted by the board in August, 1941:

"The men and discipline committee to whom was referred the matter of investigation of the Fraternal Order of Police wish to make the following report, after interviewing the president of the organization:

"That no superior officer of the Lansing police department be allowed to become a member of the Fraternal Order of Police; that the membership be confined to members of the Lansing police department with the exceptions of the superior officers; and that inasmuch as the Fraternal Order of Police is an organization of policemen, that they refrain from taking into the order, so-called associate or honorary members.

"The committee makes these recommendations having in mind the welfare of both the organization and the police department, and with the convictions that this is departmental business."

The Fraternal Order of Police is a nonprofit corporation with several subordinate lodges within the State of Michigan. Its objects, as set forth in article 2 of the constitution of the national organization, are as follows:

"SECTION 1.  This organization is formed for the purpose of promoting personal and efficient co-operation between the police officers in the cities of these various States to the end that the public may be better served in the consideration of law and law enforcement.

"SEC. 2.  Advancing social, charitable and educational undertakings among police.

"SEC. 3.  To more effectively combat crime by unity and concerted action in all matters pertaining to law enforcement.

"SEC. 4.  To promote the advancement of crime prevention and detection.

"Sec. 5. The Fraternal Order of Police denounces disloyalty and our oath of obligation binds us to our allegiance to these United States.

"Sec. 6. The Fraternal Order of Police stands for justice to humanity and for its rights, safety and development. We believe in the equality of all before the law.

"Sec. 7. We advocate the rigid enactment and enforcement of civil service laws for the police of the various States and nation.

"Sec. 8. The Fraternal Order of Police advocates and will work for the establishment of pension funds for the various cities of these States and nation."

The local lodge acting under and by authority of the national organization has adopted a constitution and bylaws in harmony with the purposes outlined in the constitution of the national organization. The preamble of the constitution and bylaws of the Joseph Johnson Lodge No. 102 of Lansing, Michigan, reads as follows:

"The objects and purposes of this lodge are to promote those objects laid down in the constitution and bylaws of the Grand Lodge, Fraternal Order of Police; to instill and cultivate the spirit of loyalty, in its membership, to the city where they are employed, and the spirit of loyal cooperation with all police organizations throughout the land; to guide and assist all of its membership in the performance of their duties as a policeman; to encourage and instill in the membership a desire for knowledge in all lines that will contribute to better service to their city and citizens of this nation; to increase the joys and happiness of our fellow members; to teach and instill obedience and respect for all laws and ordinances; and to maintain a stead-

fast resolution to guard the rights, liberties and welfare of all citizens.''

Under the rules promulgated by the State organization, each local lodge may add to the membership of its lodge by taking in so-called associate members. Such members are private citizens who pay a fee for joining the lodge and who are given a small identification tag to be attached to their automobiles.

The defendants are members of the board of police and fire commissioners provided for by the Lansing city charter. The powers of this board, as defined in chapter 14 of the Lansing city charter, are as follows:

''SEC. 209.   *   *   *   Said board or a majority of them shall have full power to hear and determine all complaints against the chief of police or any other police officer or policeman of the city   *   *   * and to remove any of them summarily or on conviction for insubordination, neglect of duty, or violation of any law of the State or city.   *   *   *

''SEC. 211. The said board of police and fire commissioners, shall have power to appoint a chief of police, a captain of police, and such other officers and policemen with pay, and such number of policemen without pay, as the said board shall deem expedient; Provided, no greater number of policemen with pay, shall be appointed than shall be authorized by the city council, and the expenses therefor provided. *   *   *

''SEC. 212. Said board shall assume and exercise the entire control of the police force, except as provided in section 211.   *   *   *

''SEC. 214. It shall be the duty of said board, and of the police force hereby constituted, at all times of the day and night, to preserve the public peace, to prevent crimes and arrest offenders.''

The cause came on for trial on its merits, some evidence was heard, and the trial court filed an opinion which reads in part as follows:

"It is obvious that the board of police and fire commissioners reached the conclusion, no question being raised as to the good faith of the members in doing so, that it is preferable that the officers of the police department should not join the plaintiffs, or either of them, and that membership should be limited to members of the police department below the rank of sergeant. It cannot be said that such action is not within the scope of the authority granted by the charter of the city of Lansing, nor that it is arbitrary or unreasonable. Neither the plaintiffs nor the individuals concerned are deprived of any constitutional rights. Observance of the rule is incidental to membership in the police department."

The trial court dismissed plaintiffs' bill of complaint. Plaintiffs appeal.

It is obvious that the board of police and fire commissioners has no authority to regulate the internal affairs of the Fraternal Order of Police or its local lodge; nor has it the right and power to determine that private citizens may not affiliate with the order. This is a matter that concerns only the order and the private citizen seeking to join. It follows that that part of the resolution of the board relating to associate or honorary members is void as being in excess of the powers of the board.

It is also a fact that the selection of the personnel of the police department rests with the board under section 211 of the city charter. No individual may rightfully claim that he is entitled to be employed as a member of the police force; nor can it be denied that when a person is appointed and becomes a member of the police department, he subjects

himself to the reasonable rules and regulations adopted by the board.

In the case at bar, the issue does not involve the right of the board to hire or refuse to hire certain individuals as members of the police force, but it does involve the right of certain officers of the police force to maintain their status as officers and at the same time continue membership in the Fraternal Order of Police.

It must be assumed that the board is a governing agency created by and deriving its powers from the charter of the city of Lansing. Section 209 of chapter 14 of the charter provides that the board may remove any police officer or policeman summarily or on conviction for insubordination, neglect of duty, or violation of any law of the State or city. Under the provisions of the charter, the grounds for action looking towards the removal of any officer or policeman are limited to those enumerated in section 209. In the case at bar, the possible grounds for removal would be insubordination for failure to comply with the resolution adopted by the board.

It must be assumed that the board has the right to make rules and regulations for the proper functioning of the police department; and that ordinarily courts will not interfere with or control the exercise of the discretionary powers of such a board. But the city charter does not vest in the board the authority to control the private lives of members of the police department unless the actions of such member or members affect their public duties. It cannot be said that the joining of a church, political party, fraternal organization, or a so-called service or dinner club necessarily affects the efficiency of the police department or divides the allegiance that members of the police department owe to the city. We have examined the constitution and bylaws of

the Fraternal Order of Police and fail to find any doctrine, principle or obligation therein contained which would conflict with the duties its members owe to the city as members of the police force. Nor do its members obligate themselves to abide by any rule or pursue any course of action that would necessitate neglect of official duty or the violation of any law.

The record shows that one Theodore Diott, a police officer of Grand Rapids, testified in behalf of plaintiffs. His testimony is in harmony with the principles enumerated in the constitution of the order and in no way throws any light on the reasons for the adoption of the resolution by the Lansing police board; nor do we find any testimony on the part of the defendants concerning the reasons for the adoption of the resolution.

The burden of proof is upon plaintiffs to show that the resolution adopted was in excess of the authority of the board. In our opinion sufficient competent evidence has been introduced by plaintiffs showing that the resolution interferes with the right of an individual to control his private life. Until some showing is made that membership in the Fraternal Order of Police conflicts or may conflict with the duties of members of the Lansing police force either as officers or policemen, the police board may not prevent membership in such association or use the resolution as a reason for discharging an officer or policeman.

The resolution adopted by the police board relating to associate members and officers of the police department is in excess of the authority of the board. The trial court was in error in sustaining such resolution. The decree of the trial court should be reversed and a decree should be entered in con-

formity with this opinion. Plaintiffs should recover costs.

BUSHNELL, J.  I do not agree that the resolution adopted by the board of police and fire commissioners of the city of Lansing "interferes with the right of an individual to control his private life."

The charter of the city of Lansing, chap. 14, § 212, specifically gives the board "entire control of the police force," and it is thus responsible to the people for the preservation of the public peace. "There is no doubt the control of a city police department is a function of local municipal government." *Smith* v. *Flint City Commission,* 258 Mich. 698, 700.

In *Coane* v. *Geary,* 298 Ill. App. 199 (18 N. E. [2d] 719), the court quoted with approval a statement from the opinion rendered in *O'Regan* v. *City of Chicago,* reported in 37 Chicago Legal News, p. 150, December 24, 1904. That statement is applicable to the instant case. It reads in part as follows:

" 'A police force is peculiar, *sui generis,* you may say, in its formation and in its relation to the city government. It is practically an organized force resembling in many respects a military force, organized under the laws of the United States and equally as important as to the functions it is required to perform.

" 'It is not an ordinary branch of the executive government like the mayor's office even, your water department, the comptroller's department, the health department, even; but, as I say, it is peculiar to itself, and to look at it in the same light that other branches of the executive department are regarded would be a mistake in a judicial decision. It is a department which requires that the members of it shall surrender their individual opinion and power to act, and submit to that of a controlling head just

as much as the common soldier must surrender his
own opinion and power of action to that of his com-
manding officer. And there is the same necessity of
discipline—of regulation existing in the police de-
partment that exists in regard to the military de-
partment. Strict discipline must be enforced, and it
must be enforced in a manner that is effective, and
without the supervision or regulation of any other
department of the State, and, particularly, without
any attempt on the part of the judicial department
(which is a branch of the government entirely dis-
tinct and separate from the executive department),
to regulate it in any way, and particularly, to regu-
late its discipline.' ''

In a case where a director of public safety had
issued an order that city firemen could not join
certain organizations, the court said:

''Police and fire departments are in a class apart.
Both are at times charged with the preservation of
public order, and for manifold reasons they owe to
the public their undivided allegiance. The power
in the city of complete control is imperatively neces-
sary if discipline is to be maintained.

''For reasons indicated we do not find the order
in judgment unreasonable.'' *Carter* v. *Thompson,*
164 Va. 312 (180 S. E. 410).

In a Vermont case, which had to do with a rule of
the board of police examiners forbidding members
of the department to take part in any political cau-
cus, the court held that:

''It is doubtless true that the restrictions imposed
must be a reasonable exercise of the power granted,
and have some just relation to the end in view. It
seems to us that the provision in question satisfies
these requirements. We think that the removal of
the police force from the field of active politics is
calculated to promote the efficiency of the force and

the purity of municipal government, and that the rule adopted imposes no greater restriction than is reasonably necessary to the accomplishment of this purpose." *Brownell* v. *Russell,* 76 Vt. 326 (57 Atl. 103).

When the Fraternal Order of Police confined its activities to "police officers engaged in regular police duties," its members were not acting as private individuals. Defendant board is not necessarily concerned with the private activities of police officers, but it is and should be greatly concerned with their activities as members of the law enforcement branch of the government. Those who serve the public, either as the makers of the law, the interpreters of the law, or those who enforce the law, must necessarily surrender, while acting in such capacity, some of their presumed private rights. As stated by Mr. Justice SHARPE:

"Nor can it be denied that when a person is appointed and becomes a member of the police department, he subjects himself to the reasonable rules and regulations adopted by the board."

The court said in *Hutchinson* v. *Magee,* 278 Pa. 119 (122 Atl. 234):

"It is generally conceded that association with an organization which, on any occasion or for any purpose, attempts to control the relations of members of either the police or fire departments toward the municipality they undertake to serve, is, in the very nature of things, inconsistent with the discipline which such employment imperatively requires, and therefore must prove subversive of the public service and detrimental to the general welfare: * * * If plaintiffs desire to retain their positions in the public service, they should have obeyed the director's order; having elected not to do so (which, of course, was the privilege of each of them, as indi-

viduals), they cannot successfully complain of the ensuing results.''

The constitution and bylaws of plaintiff's national, state and local organizations which were received in evidence provide in effect that citizens may become associate members upon payment of dues of not less than $5 per year, and such associate members will be furnished ''a membership card'' and car ''emblem.'' One would be naive, indeed, to assume that such automobile emblem did not carry with it the intimation of special privileges to associate members. This of itself is enough to require the determination that the existence of plaintiff organization within the law-enforcement body of a municipality is contrary to public policy.

Defendant board is necessarily vested with a large measure of discretion and the burden of showing arbitrary action is upon those who charge it. *Carter* v. *Thompson, supra.*

We agree with the trial judge that the resolution adopted by the board was reasonable and that:

''It cannot be said that such action is not within the scope of the authority granted by the charter of the city of Lansing, nor that it is arbitrary or unreasonable. Neither the plaintiffs nor the individuals concerned are deprived of any constitutional right.''

The decree dismissing plaintiff's bill of complaint is affirmed. Because of the public nature of the question, no costs will be granted.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred with BUSHNELL, J.