In the Matter of VINCENT G. CALFAPIETRA, Petitioner, against PATRICK WALSH, as Commissioner of the Fire Department of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, July 26, 1944.

*Matthew Silverman* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein,* of counsel), for respondents.

BENVENGA, J. Proceeding under article 78 of the Civil Practice Act for an order annulling the suspension and dismissal of petitioner from the Fire Department and directing his reinstatement.

Petitioner, a first-grade fireman, was dismissed from the Fire Department following his plea of guilty to a charge of having violated subdivision 3 of section 224 of the Rules and Regulations for the Uniformed Force of the Fire Department of the City of New York, which provides that members "shall not

\* \* \* Engage in another business or employment ", in that petitioner had been employed for about a year as senior time study engineer by the Ranger Aircraft Company in Queens County. The only issue is the validity of the rule and regulation.

It is not disputed that the Legislature may, by charter or other statutory authority, confer upon a municipality or other subordinate State agency the power to adopt rules and regulations reasonably adapted to carry out the purposes or objects for which the agency was created; that such grant of power is not an improper delegation of legislative authority within the meaning of the constitutional inhibition, express or implied, against delegating legislative power; and that reasonable rules and regulations, duly adopted pursuant to such authority, have the force and effect of an enactment of the Legislature (*Cherubino* v. *Meenan*, 253 N. Y. 462, 463, 466; *Angueira* v. *Brooklyn & Queens Transit Corp.*, 263 App. Div. 43, 45; 2 Dillon on Municipal Corporations [5th ed.], § 574).

Nor is it disputed that the Legislature has granted to the Fire Commissioner " sole and exclusive power " to " perform all duties for the government, management, maintenance and direction of the fire department " (New York City Charter [1938], § 487). He may, except as otherwise provided by law, " appoint and remove, subject to the provisions of the civil service law, all chiefs of bureaus and all other officers, employees and subordinates " (§ 884), and may, except as otherwise provided by law, " make rules and regulations for the conduct of his \* \* \* department and to carry out its powers and duties " (§ 885, subd. a), which rules " shall be printed, published and circulated among officers and members of such department " (Administrative Code of City of New York, § 487a–12.0; L. 1937, ch. 929). He has " power, in his discretion, on conviction of a member of the force of any \* \* \* violation of rules, or neglect or disobedience of orders \* \* \* to punish the offending party by reprimand, forfeiture or withholding of pay for a specified time, or dismissal from the force " (§ 487a–12.0).

Accordingly, since it is the duty of the Fire Commissioner to prevent and extinguish fires and protect life and property at any place within the city, it would seem that he has power, under section 885 (*supra*) of the Charter, to promulgate a rule prohibiting outside employment, if such a rule is essential for the efficient conduct of the Fire Department and reasonably necessary to carry out his powers and duties. (*People ex rel. Rogers* v. *Tinney*, 184 App. Div. 748; *Reichelderfer* v. *Ihrie*, 59 F. 2d 873; *Bell* v. *District Court of Holyoke*, 314 Mass. 622.)

However, petitioner asserts that, prior to his appointment as fireman, he had received training in mechanical engineering and that his desire to employ his training and experience in the nation's war effort led him to apply for employment in war plants. That, to be sure, is a laudable motive. But, as has been wisely remarked, conflagrations wait on no man. For that reason, a fireman is potentially on duty at all times. He is obliged to answer alarms even when off duty. To be efficient, he must at all times be in good physical condition. Hence, a man who, like petitioner, concededly averaged over one hundred hours a week, working on two jobs at distant places, without sufficient time for rest and relaxation, could not properly and efficiently perform his duties as fireman. Moreover, if one member of the force were permitted to accept outside employment, the same privilege would have to be extended to others. The result, if the practice became widespread, might be disastrous.

It suffices, in this connection, to quote from the recent *Bell* case (*supra*). That case involved the validity of a rule of a city fire department prohibiting members from entering private employment while off duty. Citing, with approval, the *Rogers* and *Reichelderfer* cases (*supra*), among others, the court held the rule valid as having a rational relation to the maintenance and administration of an efficient municipal fire fighting force. The court said: '' The nature of the duties assumed by a member of a fire department is such that it cannot be anticipated when he will be called upon to assist in the extinguishment of fires. He is actually on duty at certain hours, but he is potentially on duty whenever the emergency arises that calls for his services. * * * If he had the right to absent himself without permission and engage in another occupation in another city, then every other member had an equal right. Such a situation would seriously impair the ability of the department to function properly and to furnish adequate protection to the city and its citizens. * * * A fireman in the active service of a city must keep himself in good physical condition for the arduous tasks and probable dangers that may be encountered in the performance of his duties. * * * His (petitioner's) principal calling, so far as the citizens of Holyoke were concerned, was that of a fireman, and he would not have any right to consider his position as a fireman as incidental to another occupation in private industry in which he had embarked or to permit his outside work to impair his faculties or lessen his ability properly to perform his duties as a fireman.''

The case of *Matter of Natilson* v. *Hodson* (289 N. Y. 842, affg. 264 App. Div. 384), upon which the petitioner relies, is distinguishable. There, the Commissioner of Welfare promulgated a rule forbidding those employed on full time in his department from engaging in outside employment. The Appellate Division held that the Commissioner had no power to promulgate the rule. But in doing so, the court recognized the power of the Commissioner, pursuant to section 885 of the Charter to make " *reasonable* rules for the efficient conduct " of his department. (Italics supplied.) The Court of Appeals, by a five to two decision, held that the rule " exceeded " the powers conferred by section 885 of the Charter. The dissenting judges maintained that the rule in question was " *a reasonable* regulation relating to the internal administration of the Department of Welfare and designed to eliminate a practice which may reasonably be considered to impair efficient conduct of the Department." (Italics supplied.)

Clearly, therefore, the courts differed, not on the question of whether the Commissioner had power to make reasonable rules for the efficient conduct of his department, but whether the rule was a reasonable one; in other words, whether the rule had any rational relation to the social welfare functions and duties of the Department of Welfare. That it had no such relation seems clear when it is considered that the *Natilson* case (*supra*) involved a social investigator who had accepted part-time evening employment; that, as the record on appeal discloses, the rule was promulgated because of the then existing economic condition and was designed to relieve unemployment; and that, as the Appellate Division pointed out, there was " no claim * * * that the outside work * * * interfered with the performance of his civil service duty " (264 App. Div. 384, 385, *supra*).

Here, the rule is not designed to relieve unemployment, but is intended for the efficient conduct and administration of the fire department. The relation between the rule and the end sought to be accomplished is too clear for argument. As the court pointed out in the *Reichelderfer case* (59 F. 2d 873, *supra*), which upheld a regulation of a fire department prohibiting outside work for compensation: " Our conclusion in this case might very well be questioned or denied in the case of certain other classes of * * * employees, but in the case of firemen a different standard might reasonably be applied. * * * In saying this, we are not unmindful of those basic principles of our government that every man has the right and no man can

be prohibited from exercising the right of following any lawful avocation on the same terms with others; that he is free to choose his occupation when and where he pleases, provided he does no wrong to the state or some other individual. To all of this we subscribe, but when one seeks a position as fireman he must, in the very nature of his employment, subordinate, to the extent necessary to accomplish the end sought, rights which are personal to the common weal.''

Whether, in view of the controversial character of the issue involved and the laudable motive which allegedly actuated the petitioner to accept outside employment, the Commissioner would be justified in mitigating the penalty imposed, is a matter which rests in his sound discretion.

The application is denied, and the petition dismissed, but without costs.